UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GWENDOLYN TACKIE, individually and on
behalf of all others similarly situated,

Plaintiff,

v.

J.S.P. LIFE AGENCY, INC.,

Defendant.

**ECF Case**

**Case No. 18-CV-10786**

**FLSA COLLECTIVE / CLASS
ACTION COMPLAINT**

COMES NOW THE PLAINTIFF, Gwendolyn Tackie, individually and on behalf of all others similarly situated, by her attorneys, Steven M. Warshawsky and Tomasz J. Piotrowski, for her Complaint against the defendant, J.S.P. Life Agency, Inc., and alleging upon personal knowledge and upon information and belief as follows:

## NATURE OF THE CASE

1.      This is a lawsuit to recover unpaid overtime wages owed to the plaintiff and other similarly situated employees who at all relevant times were employed by the defendant as nurses (Registered Nurses and Licensed Practical Nurses) providing skilled in-home nursing care to the defendant's clients, and who were paid an hourly wage, but who were not paid in accordance with applicable federal and state labor laws.

2.      Specifically, the available payroll records show that for pay periods in which the plaintiff was owed overtime pay, for working more than 40 hours in a workweek, the defendant intentionally manipulated and reduced her applicable hourly rates in order to compute less overtime compensation than she was owed and should have been paid. This deliberate scheme to avoid paying overtime premiums to the plaintiff violated federal and state labor laws. Upon information and belief, the defendant used the same unlawful

payroll scheme to avoid paying overtime premiums to other nurses.  The defendant also violated New York Labor Law § 195(3) by not providing the plaintiff with wage statements that accurately reported the correct pay rates, and New York Labor Law § 195(1) by not providing the plaintiff with the required notice of pay rate at the time of hire and whenever changes were made to her payroll information.  Upon information and belief, the defendant failed to provide other nurses with correct wage statements and pay rate notices.

3.     The plaintiff brings this action on behalf of herself, asserting claims under the Fair Labor Standards Act (FLSA) and the New York State Labor Law, and on behalf of other similarly situated employees, as a collective action under the FLSA pursuant to 29 U.S.C. § 216(b) (federal claims) and as a class action under the New York State Labor Law pursuant to Fed. R. Civ. P. 23 (state claims).

4.     The plaintiff, individually and on behalf of all others similarly situated, is entitled to compensatory damages for unpaid overtime premiums (under federal and state law), liquidated damages on the unpaid overtime premiums (under federal and state law), statutory damages for the wage statement violations (under state law), statutory damages for the pay rate notice violations (under state law), applicable pre- and post-judgment interest, and attorney's fees and costs.  The plaintiff also requests a permanent injunction prohibiting the practices complained of herein and requiring the defendant to calculate and pay overtime compensation to the plaintiff and other similarly situated employees in accordance with federal and state labor laws.  The plaintiff demands trial by jury.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331, because this action arises under the laws of the United States.

6.      This Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28 U.S.C. § 1367, because the plaintiff's federal and state law claims derive from a common nucleus of operative facts and form part of the same case or controversy under Article III of the U.S. Constitution.

7.      This Court has venue over this action pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## PARTIES

8.      Plaintiff **Gwendolyn Tackie** is an adult person who resides in Gaithersburg, Maryland.  Ms. Tackie's written consent to be a party plaintiff in this action is attached hereto.

9.      Defendant **J.S.P. Life Agency, Inc. a/k/a JSP Life Agency Home Health Service ("JSP")**, is a New York corporation, with its principal place of business located at 279-281 East 204th Street, 2nd Floor, Bronx, New York, 10467.  According to the New York State Division of Corporations website, JSP's Chief Executive Officer is Jose Nicanor Rodiguez.

## FLSA ALLEGATIONS

10.     At all relevant times, JSP was an "employer" within the meaning of the FLSA, 29 U.S.C. § 203(d).

11.     At all relevant times, JSP was an "enterprise engaged in commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s).

12.     At all relevant times, upon information and belief, JSP employed two or more persons "handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce" within the meaning of the FLSA, 29 U.S.C. § 203(s).

13.     At all relevant times, upon information and belief, JSP had "annual gross volume of sales made or business done [of] not less than $500,000" within the meaning of the FLSA, 29 U.S.C. § 203(s).

14.     At all relevant times, Ms. Tackie was an "employee" of JSP within the meaning of the FLSA, 29 U.S.C. § 203(e).

15.     At all relevant times, Ms. Tackie was a "non-exempt" employee entitled to overtime pay within the meaning of the FLSA, 29 U.S.C. §§ 207, 213.

16.     At all relevant times, the other persons who were employed by JSP as nurses were "employees" within the meaning of the FLSA, 29 U.S.C. § 203(e).

17.     At all relevant times, the other persons who were employed as nurses by JSP were "non-exempt" employees entitled to overtime pay within the meaning of the FLSA, 29 U.S.C. §§ 207, 213.

18.     At all relevant times, the plaintiff and other persons who were employed as nurses by JSP were entitled to the rights and protections of the FLSA, including the overtime pay requirements set forth in 29 U.S.C. § 207.

## NEW YORK STATE LABOR LAW ALLEGATIONS

19.     At all relevant times, JSP was an "employer" within the meaning of the New York State Labor Law and its implementing regulations.

20.     At all relevant times, Ms. Tackie was an "employee" of JSP within the meaning of the New York State Labor Law and its implementing regulations.

21.     At all relevant times, Ms. Tackie was a "non-exempt" employee entitled to overtime pay within the meaning of the New York State Labor Law and its implementing regulations.

22.     At all relevant times, the other persons who were employed as nurses by JSP were "employees" within the meaning of the New York State Labor Law and its implementing regulations.

23.     At all relevant times, the other persons who were employed as nurses by JSP were "non-exempt" employees entitled to overtime pay within the meaning of the New York State Labor Law and its implementing regulations.

24.     At all relevant times, the plaintiff and other persons who were employed as nurses by JSP were entitled to the rights and protections of the New York State Labor Law and its implementing regulations, including the overtime pay requirements set forth in the Minimum Wage Notice for Miscellaneous Industries and Occupations and the wage notice and wage statement requirements set forth in Article 6 § 195.

## FACTUAL ALLEGATIONS

25.     Ms. Tackie is a Registered Nurse (RN).

26.     Ms. Tackie started working for JSP in or about May 2016.  She last worked for JSP in or about March 2018.

27.     Ms. Tackie provided skilled in-home nursing care to JSP's clients.

28.     At all relevant times, JSP treated Ms. Tackie as an employee, not an independent contractor.

29.     Ms. Tackie was compensated for her work on an hourly basis.  Because she was not paid on a salary basis, Ms. Tackie was not an exempt "learned professional" within the meaning of the FLSA and the New York State Labor Law.

30.    Ms. Tackie received a weekly payroll statement that listed her regular and overtime hours worked, the applicable hourly rates, her gross compensation, various federal, state, and city deductions and withholdings, and her net pay.  Her net pay was paid via direct deposit.

31.    The payroll statements accurately reported the number of regular and overtime hours worked by Ms. Tackie for each pay period.  This is not an "off the clock" or "time shaving" case.

32.    However, the payroll statements did not accurately calculate and report the amount of overtime compensation that Ms. Tackie was owed for pay periods in which she worked more than 40 hours in a workweek.

33.    As detailed below, Ms. Tackie's payroll statements show that for pay periods in which she was owed overtime pay, JSP intentionally manipulated and reduced the applicable hourly rates in order to compute overtime compensation that was less than Ms. Tackie was owed and should have been paid.

**Hourly Rate $35; Overtime Rate $52.50**

34.    When Ms. Tackie started working for JSP her regular rate of pay was $35 per hour.  For example, for pay period ending 5/21/16 (pay date 6/3/16), the payroll statement shows 24 hours of regular time at $35.00 per hour, for total gross compensation of $840.  As another example, for pay period ending 6/18/16 (pay date 7/1/16), the payroll statement shows 24 hours of regular time at $35.00 per hour, for total gross compensation of $840.  Likewise, for pay period ending 2/11/17 (pay date 2/24/17), the payroll statement shows 17.5 hours of regular time at $35.00 per hour, for total gross compensation of $612.5.

35.    However, for any pay period in which Ms. Tackie worked more than 40 hours, and therefore was owed overtime pay of $52.50 per hour (an overtime premium of $17.50

per hour), her payroll records were intentionally manipulated, by reducing the applicable hourly rates in order to compute overtime compensation that was less than she was owed and should have been paid.  For example (based on available payroll records):

36.    For pay period ending 7/2/16 (pay date 7/15/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

37.    For pay period ending 7/9/16 (pay date 7/22/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

38.    For pay period ending 7/16/16 (pay date 7/29/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

39.    For pay period ending 7/23/16 (pay date 8/5/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

40.    For pay period ending 7/30/16 (pay date 8/12/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

41.    For pay period ending 8/6/16 (pay date 8/19/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

42.    For pay period ending 8/13/16 (pay date 8/26/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

43.    For pay period ending 8/20/16 (pay date 9/02/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

44.    For pay period ending 8/27/16 (pay date 9/9/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

45.    For pay period ending 9/3/16 (pay date 9/16/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

46.    For pay period ending 9/10/16 (pay date 9/23/16), the payroll statement reported 40 hours of regular time at $29.00 per hour [not $35] and 30 hours of overtime at $43.50 per hour [not $52.50].  The total gross compensation equaled $2,465 – but should have been $2,975.  Ms. Tackie was underpaid overtime in the amount of $510.

47.    For pay period ending 9/17/16 (pay date 9/30/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

48.    For pay period ending 9/24/16 (pay date 10/7/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

49.    For pay period ending 10/1/16 (pay date 10/14/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

50.    For pay period ending 10/8/16 (pay date 10/21/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

51.    For pay period ending 10/15/16 (pay date 10/28/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

52.    For pay period ending 10/22/16 (pay date 11/4/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

53.    For pay period ending 10/29/16 (pay date 11/14/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

54.    For pay period ending 11/5/16 (pay date 11/18/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

55.    For pay period ending 11/12/16 (pay date 11/23/16), the payroll statement reported 40 hours of regular time at $32.50 per hour [not $35] and 8 hours of overtime at $48.75 per hour [not $52.50].  The total gross compensation equaled $1,690 – but should have been $1,820.  Ms. Tackie was underpaid overtime in the amount of $130.

56.    For pay period ending 11/19/16 (pay date 12/2/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 22 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,190 – but should have been $2,555.  Ms. Tackie was underpaid overtime in the amount of $365.

57.    For pay period ending 11/26/16 (pay date 12/9/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

58.    For pay period ending 12/3/16 (pay date 12/16/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

59.    For pay period ending 12/10/16 (pay date 12/23/16), the payroll statement reported 40 hours of regular time at $30.00 per hour [not $35] and 20 hours of overtime at $45.00 per hour [not $52.50].  The total gross compensation equaled $2,100 – but should have been $2,450.  Ms. Tackie was underpaid overtime in the amount of $350.

60.    For pay period ending 2/18/17 (pay date 3/3/17), the payroll statement reported 40 hours of regular time at $34.00 per hour [not $35] and 4 hours of overtime at $51.00 per hour [not $52.50].  The total gross compensation equaled $1,564 – but should have been $1,610.  Ms. Tackie was underpaid overtime in the amount of $46.

61.    For pay period ending 2/25/17 (pay date 3/10/17), the payroll statement reported 42 hours of regular time at $35.00 per hour and 0 hours of overtime.  The total gross compensation equaled $1,470 – but should have been $1,505.  Ms. Tackie was underpaid overtime in the amount of $35.

62.    For pay period ending 4/1/17 (pay date 4/14/17), the payroll statement reported 40 hours of regular time at $32.00 per hour [not $35] and 10 hours of overtime at $48.00 per hour [not $52.50].  The total gross compensation equaled $1,760 – but should have been $1,925.  Ms. Tackie was underpaid overtime in the amount of $165.

63.    For pay period ending 3/17/18 (pay date 3/30/18), the payroll statement reported 40.5 hours of regular time at $35.00 per hour and 0 hours of overtime.  The total gross compensation equaled $1,417.50 – but should have been $1,426.25.  Ms. Tackie was underpaid overtime in the amount of $8.75.

64.    Upon information and belief, based on the available payroll records, JSP failed to pay overtime premiums to Ms. Tackie in an amount no less than $7,289.75.

65.    JSP's failure to pay these overtime premiums was willful within the meaning of 29 U.S.C. § 255(a).

66.    Upon information and belief, at the time of hire and whenever changes were made to her payroll information, Ms. Tackie was not provided with the pay rate notices required by New York State Labor Law, Article 6 § 195(1).

67.    The defendant also violated New York Labor Law § 195(3), by not providing Ms. Tackie with wage statements that accurately reported the correct pay rates.

## COLLECTIVE/CLASS ALLEGATIONS

68.    The plaintiff brings this action on behalf of herself and other similarly situated employees who were employed by the defendant as nurses (either RNs or LPNs) at any time during the relevant limitations periods, and who were paid an hourly wage, but were not paid in accordance with applicable federal and state labor laws and regulations.

69.    Upon information and belief, during the relevant limitations periods, JSP employed more than forty other nurses.

70.    Upon information and belief, at all relevant times, JSP treated the other nurses as employees, not independent contractors.

71.    Upon information and belief, the other nurses were compensated for their work on an hourly basis.  Because they were not paid on a salary basis, the other nurses were not exempt "learned professionals" within the meaning of the FLSA and the New York State Labor Law.

72.    Upon information and belief, the other nurses received weekly payroll statements that listed their regular and overtime hours worked, the applicable hourly rates, their gross compensation, various federal, state, and city deductions and withholdings, and their net pay.

73.    Upon information and belief, the payroll statements accurately reported the number of regular and overtime hours worked by the other nurses for each pay period.

74.    However, upon information and belief, the payroll statements did not accurately calculate and report the amount of overtime compensation that the other nurses were owed for pay periods in which they worked more than 40 hours in a workweek.

75.    Upon information and belief, JSP intentionally manipulated and reduced the applicable hourly rates of other nurses in order to compute overtime compensation that was less than other nurses were owed and should have been paid.

76.    Upon information and belief, JSP did not provide the other nurses with the pay rate notices required by New York State Labor Law, Article 6 § 195(1).

77.    Upon information and belief, the defendant also violated New York Labor Law § 195(3), by not providing the other nurses with wage statements that accurately reported the correct pay rates.

78.    The plaintiff and similarly situated nurses were the victims of a common policy or practice of the defendant, to wit, the knowing and willful failure to pay nurses in accordance with applicable federal and state labor laws and regulations, specifically, the failure (1) to pay them overtime for all hours worked over 40 in a workweek (in violation of federal and state law), (2) to provide them with wage statements that accurately reported the correct pay rates (in violation of state law), and (3) to provide them with pay rate notices (in violation of state law).

79.    The proposed class is so numerous that joinder of all members is impracticable.

80.    The plaintiff's claims are typical of the claims of similarly situated nurses.  At all relevant times, the defendant treated the plaintiff and similarly situated nurses in the same manner as pertains to the payroll policies and practices at issue in this lawsuit.  Any

lawsuit brought by other nurses for the same violations would be identical to the lawsuit brought by the plaintiff.

81.     There are questions of law or fact common to the plaintiff and similarly situated nurses, including but not limited to how the defendant managed and recorded the nurses' work time, how the defendant calculated and paid the nurses' wages, whether the defendant properly paid the nurses for overtime hours worked, and whether the defendant provided the nurses with accurate wage statements and pay rate notices as required by state law.

82.     The plaintiff will fairly and adequately protect the interests of the proposed class members.  She has no interests antagonistic to the class members.  The plaintiff is represented by attorneys who are experienced and competent in employment litigation, including wage and hour litigation, and class action litigation.

## FIRST CLAIM:  UNPAID OVERTIME
### (Fair Labor Standards Act)

83.     The plaintiff repeats and re-alleges Paragraphs 1-82 above.

84.     At all relevant times, the defendant was a covered employer within the meaning of the FLSA.

85.     At all relevant times, the plaintiff and similarly situated nurses were covered employees within the meaning of the FLSA.

86.      The FLSA, 29 U.S.C. § 207(a)(1), guarantees to each covered employee overtime pay "for a workweek longer than forty hours . . . at a rate not less than one and one-half times the regular rate at which he is employed."

87.     As alleged above, the defendant failed to pay the plaintiff and similarly situated nurses the required overtime pay for workweeks in which they worked over 40 by

intentionally manipulating and reducing their applicable hourly rates in order to compute less overtime compensation than the plaintiff and other nurses were owed and should have been paid.

88.    The defendant's failure to pay the overtime premiums to the plaintiff and similarly situated nurses was willful and not in good faith.

89.    The applicable limitations period for the plaintiff's and similarly situated nurses' FLSA overtime claims is three years.

90.    As a result of the defendant's unlawful conduct, the plaintiff and similarly situated nurses are entitled to recover unpaid overtime pay, liquidated damages, attorney's fees and costs, and all other relief available under the FLSA.

## SECOND CLAIM:  UNPAID OVERTIME
### (New York State Labor Law)

91.    The plaintiff repeats and re-alleges Paragraphs 1-90 above.

92.    At all relevant times, the defendant was a covered employer within the meaning of the New York State Labor Law and its implementing regulations.

93.    At all relevant times, the plaintiff and similarly situated nurses were covered employees within the meaning of the New York State Labor Law and its implementing regulations.

94.     The New York State Labor Law, Minimum Wage Notice for Miscellaneous Industries and Occupations, requires employers, in relevant part, to pay employees overtime "at a wage rate of one and one-half times the employee's regular rate" in the same manner and methods as under the FLSA.

95.    As alleged above, the defendant failed to pay the plaintiff and similarly situated nurses the required overtime pay for workweeks in which they worked over 40 by

intentionally manipulating and reducing their applicable hourly rates in order to compute less overtime compensation than the plaintiff and other nurses were owed and should have been paid.

96.    The defendant's failure to pay the overtime premiums to the plaintiff and similarly situated nurses was willful and not in good faith.

97.    The applicable limitations period for the plaintiff's and similarly situated nurses' state overtime claims is six years.

98.    As a result of the defendant's unlawful conduct, the plaintiff and similarly situated nurses are entitled to recover unpaid overtime pay, liquidated damages, attorney's fees and costs, and all other relief available under the New York State Labor Law and its implementing regulations.

## THIRD CLAIM: WAGE STATEMENT VIOLATIONS
### (New York State Labor Law)

99.    The plaintiff repeats and re-alleges Paragraphs 1-98 above.

100.   At all relevant times, the defendant was a covered employer within the meaning of the New York State Labor Law and its implementing regulations.

101.   At all relevant times, the plaintiff and similarly situated nurses were covered employees within the meaning of the New York State Labor Law and its implementing regulations.

102.   The New York State Labor Law, Article 6 § 195(3), requires employers, in relevant part, to provide a wage statement "with every payment of wages, listing the following: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof,

whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; and net wages."

103.    As alleged above, the defendant failed to provide the plaintiff and similarly situated nurses, with each paycheck, with the required wage statements that accurately reported the correct regular and overtime pay rates for calculation of the plaintiff's and similarly situated nurses' wages.

104.    The defendant's failure to provide correct wage statements to the plaintiff and similarly situated nurses was willful and not in good faith.

105.    Pursuant to New York State Labor Law, Article 6 § 198(1-d), as a result of failing to provide the required wage statements, the defendant is liable to the plaintiff and to each similarly situated nurse in the amount of "two hundred fifty dollars for each work day that the violations occurred or continue to occur, but not to exceed a total of five thousand dollars."

106.    As a result of the defendant's unlawful conduct, the plaintiff and similarly situated nurses are entitled to recover statutory damages, attorney's fees and costs, and all other relief available under the New York State Labor Law and its implementing regulations.

## FOURTH CLAIM:  PAY RATE NOTICE VIOLATIONS
### (New York State Labor Law)

107.    The plaintiff repeats and re-alleges Paragraphs 1-106 above.

108.    At all relevant times, the defendant was a covered employer within the meaning of the New York State Labor Law.

109.    At all relevant times, the plaintiff and similarly situated nurses were covered employees within the meaning of the New York State Labor Law.

110.    The New York State Labor Law, Article 6 § 195(1), requires employers, in relevant part, to provide each employee "at the time of hiring, a notice containing the following information:  the rate or rates of pay and basis thereof . . . the regular pay day designated by the employer . . . the name of the employer; any 'doing business as' names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.  Each time the employer provides such notice to an employee, the employer shall obtain from the employee a signed and dated written acknowledgement . . . of receipt of this notice, which the employer shall preserve and maintain for six years."

111.    As alleged above, the defendant failed to provide the required pay rate notice to the plaintiff and similarly situated nurses at the time of hire and whenever changes were made to their payroll information.

112.    The defendant's failure to provide the required pay rate notices to the plaintiff and similarly situated nurses was willful and not in good faith.

113.    Pursuant to New York State Labor Law, Article 6 § 198 (1-b), as a result of failing to provide the required pay rate notice, the defendant is liable to the plaintiff and to each similarly situated nurse in the amount of "fifty dollars for each work week that the violations occurred or continue to occur, but not to exceed a total of two thousand five hundred dollars."

114.    As a result of the defendant's unlawful conduct, the plaintiff and similarly situated nurses are entitled to recover statutory damages, attorney's fees and costs, and all other relief available under the New York State Labor Law.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, the plaintiff hereby demands a trial by jury as to all issues triable by jury in the above-captioned civil action.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff respectfully prays for relief as follows:

A.      Designation of this action as a collective action under the FLSA on behalf of the plaintiff and similarly situated nurses who were employed by the defendant at any time during the relevant limitations period and who were paid on an hourly basis (asserting claims for unpaid overtime under the FLSA) and prompt issuance of notice pursuant to 29 U.S.C. § 2l6(b) to the FLSA opt-in class members, apprising them of the pendency of this action, and permitting them to assert timely FLSA claims in this action by filing individual Consent to Sue forms pursuant to 29 U.S.C. § 216(b);

B.      Designation of the plaintiff and her counsel as representatives of the FLSA opt-in class members;

C.      Certification of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the plaintiff and similarly situated nurses who were employed by the defendant at any time during the relevant limitations period and who were paid on an hourly basis (asserting claims for unpaid overtime and wage notice and wage statement violations under the New York State Labor Law);

D.      Designation of the plaintiff and her counsel as representatives of the Rule 23 class members;

E.      A judgment declaring that the defendant violated the FLSA and the New York State Labor Law as alleged herein;

F.      A judgment declaring that the defendant's violations were willful and not in good faith as alleged herein;

H.      A judgment awarding the plaintiff, FLSA class members, and Rule 23 class members, all unpaid overtime wages, liquidated damages, and statutory penalties they are owed under federal and state labor laws and regulations, to be paid by the defendant;

D.      An order imposing appropriate injunctive remedies on the defendant, including but not limited to an order prohibiting the defendant from continuing to engage in the unlawful conduct alleged herein;

E.      Pre-judgment and post-judgment interest as allowed by law;

F.      Attorney's fees, costs, and disbursements as allowed by law; and

G.      Such other and further legal and equitable relief as this Court deems necessary, just, and proper.

Dated:      November 19, 2018
            New York, NY

                                        Respectfully submitted,

                                        *Steven M. Warshawsky*

            By:     _____
                                        STEVEN M. WARSHAWSKY (SW 5431)
                                        The Warshawsky Law Firm
                                        Empire State Building
                                        350 Fifth Avenue, 59th Floor
                                        New York, NY  10118
                                        Tel.:  (212) 601-1980
                                        Email:  smw@warshawskylawfirm.com

                                        TOMASZ J. PIOTROWSKI (TP 5515)
                                        T.J. Piotrowski Law Firm
                                        176 Kent Street, Suite 2L
                                        Brooklyn, NY 11222
                                        Tel.:  (917) 612-0788
                                        Email:  tomjerzy@msn.com

                                        *Attorneys for Plaintiff Gwendolyn Tackie*